UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATRICIA BELL AND JOHNNIE BELL

                              Plaintiffs,

          against-

THE CITY OF NEW YORK, LIEUTENANT
DAVID REILLY, POLICE OFFICERS
RACHID BENLHOUSSAIN (Shield 21282)
and THOMAS PELLICANO (Shield 30927),
and JOHN and JANE DOES 1-3,

                             Defendants.
------------------------------------------------------------------X

13 CV 5447 (RRM) (CLP)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiffs, by their attorney, Joel Berger, Esq., for their first amended complaint allege, upon information and belief, as follows:

### *NATURE OF THE ACTION*

      1.     This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including an illegal entry into and search of a dwelling by employees of the New York City Police Department (NYPD).

### *JURISDICTION AND VENUE*

      2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

      3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

      4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### *PENDENT JURISDICTION*

      5.     This Court also has jurisdiction over plaintiffs' state law constitutional and negligence

claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On August 8, 2013, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e. On October 21, 2013, both plaintiffs testified at hearings conducted pursuant to General Municipal Law § 50-H.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action was being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

9. Plaintiffs demand trial by jury in this action.

## *PARTIES*

10. Plaintiffs are African-Americans, citizens of the United States and residents of the State of New York.

11. Plaintiff Patricia Bell, age 59, resides at 735 Gates Avenue, Apartment 6B, Brooklyn, NY 11221, in the Bedford-Stuyvesant neighborhood of Brooklyn.

12. Patricia Bell is in ill health, suffering from hypertension and heart disease, and must use a walker and wheelchair.

13. Particia Bell suffered chest pains as a result of the incident described herein, and had to be hospitalized at Woodhull Medical Center.

14. Plaintiff Johnnie Bell is Patricia Bell's adult son.

15. Johnnie Bell resides with his mother, Patricia Bell, at 735 Gates Avenue, Apartment

6B, Brooklyn, NY 11221, in the Bedford-Stuyvesant neighborhood of Brooklyn.

16.  Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

17.  Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, supervisory police officers and 911 operators.

18.  At all times relevant herein, defendant David Reilly was a NYPD Lieutenant and defendants Rachid Benlhoussain (Shield 21282) and Thomas Pellicano (Shield 30927) were police officers, employees of the NYPD, who authorized, ordered, participated in or were otherwise involved in the Incident alleged herein. Reilly is presently assigned to Patrol Borough Brooklyn North. Benlhoussain and Pellicano are presently assigned to the 81st Police Precinct.

19.  Defendants John and Jane Does 1-3 are other NYPD and New York City employees involved in the Incident alleged herein. Plaintiffs do not know their real identities at this time.

20.  At all times relevant herein, defendants Reilly, Benlhoussain, Pellicano and John and Jane Does 1-3 were acting as agents, servants and employees of defendant City of New York and the NYPD.

21.  At all times relevant herein, all defendants were all acting under color of state law.

## *FACTS*

22.  On Friday, July 26, 2013, at approximately 4:19 A.M., at 735 Gates Avenue, # 6B, Brooklyn, NY 11221, numerous officers of the NYPD, including defendants Reilly, Benlhoussain and Pellicano, broke through the door to plaintiffs' apartment and burst inside.

23.  The defendant officers did not have a search warrant.

24. Plaintiffs were both in their beds, in nightclothes and sound asleep, as it was after 4 A.M.

25. All was quiet within the apartment.

26. There were no sounds of a struggle or argument that might be an indication that something was amiss within the apartment.

27. The defendant officers did not knock before entering.

28. If the defendant officers announced their presence in any manner, they did not accord the plaintiffs, sound asleep after 4 A.M., adequate time to respond.

29. At no time did plaintiffs provide any consent for defendants to enter and search their dwelling.

30. At no time did defendants provide plaintiffs with an opportunity to decide whether to consent to defendants entering and searching their dwelling.

31. After breaking into the apartment, defendants made plaintiff Johnnie Bell sit outside of the apartment in the hallway, wearing only boxer shorts and a T-shirt.

32. Defendants also ordered plaintiff Patricia Bell to stand in the hallway also but she refused to go there in her nightclothes.

33. The only excuse offered by the police was the claim that they had heard that someone was being hurt or stabbed or was somehow trapped in the apartment.

34. Defendants did not say from whom or how they had received such information.

35. Defendants did not say what, if anything, they had done to verify the information before breaking into plaintiffs' dwelling.

36. Defendants thoroughly searched the apartment for at least 20 minutes.

37. Defendants found no one in the apartment except plaintiffs Patricia and Johnnie Bell.

38. Defendants found no signs that there had been any struggle whatsoever in the apartment.

39. Defendants stated to plaintiffs that they must have entered the wrong apartment.

40. Defendants stated that they were sorry.

41. Defendants knew as police officers that without a warrant they were required to engage in reasonable efforts to verify whatever information they had before breaking into an apartment.

42. Defendants nonetheless had plaintiffs' locks broken and their door rammed and entered plaintiffs' dwelling at approximately 4:19 A.M. without a warrant, based solely upon speculation and information that was obviously unreliable and that did not provide them with probable cause for such a warrantless entry.

43. Defendants acted on the basis of two 911 calls, neither of which described an assault in progress.

44. Defendants acted on the basis of two 911 calls, neither of which claimed that the caller was inside plaintiffs' apartment.

45. On both 911 calls the caller explicitly stated that she was outside plaintiffs' apartment.

46. On the first call, made at approximately 12:59 A.M., the caller began by stating merely that a male occupant of plaintiffs' apartment had her cell phone and wouldn't answer the door to give it back.

47. Only upon further questioning did the caller embellish and claim that the occupant had assaulted her

5

48. Only upon still further questioning did the caller embellish still further and claim that the occupant had threatened her with a knife.

49. The caller did not give a first name or a telephone number, stating only that her last name was "Jackson."

50. On the first call the caller lied about her location, claiming that she was calling from a pay phone in a hallway of plaintiffs' apartment building.  The only thing she said about her location that was truthful was that she was not inside apartment 6B.

51. Response to the first call by defendant Pellicano and other defendants established that the caller had lied, in that there were no pay phones in the hallway of the building.

52. Response to the first call by defendant Pellicano and other defendants established that the caller had lied by stating that she was calling from a pay phone in a hallway of the building when in fact the call had come from the apartment of a neighbor of plaintiffs, Gwendolyn Cooper, who lives in apartment 6F of the building.

53. Cooper confirmed to Pellicano and other defendants that she had let a woman use her telephone, but at no time did she state that the woman appeared injured in any manner.

54. The same caller placed another 911 call approximately 1½ hours later, at approximately 2:33 A.M.

55. The second call came from a cell phone.

56. The cell phone did not accept calls when defendants attempted have the caller called back to verify the caller's status and location.

57. On the second call the caller complained that the police had not responded to her first call, even though defendants had in fact responded and had been unable to locate her or to determine

6

from the neighbor that she had been injured in any manner and had further ascertained that she had lied about the location of her call.

58. On the second call the caller further embellished by claiming that the male occupant of apartment 6B had cut her with a knife, when in fact she had made no such claim on the first call and she did not allege that this supposed cutting had been a more recent event occurring after the first call.

59. On the second call the caller further announced that she was a prostitute and claimed that the male in the apartment was a "trick" whom she further claimed was a drug dealer.

60. On the second call the caller further stated that the male's mother was in the apartment but that she was "retarded" and a "bitch."

61. On the second call the caller explicitly stated that she was not inside apartment 6B. 62. On the second call the caller explicitly stated that she had left apartment 6B.

63. On the second call the caller explicitly agreed to meet responders in front of plaintiffs' apartment building.

64. When defendants arrived at plaintiffs' building there was no sign of the caller

65. All efforts to communicate with the caller by calling the cell phone from which she had called were unsuccessful.

66. Despite the patent unreliability of the two calls, defendants decided that there might be someone in distress inside apartment 6B.

67. Despite the patent unreliability of the two calls, the fact that the caller had not met the police in front of the building as promised and was not answering calls to her cell phone, and the fact that the caller at no time stated that on either call that she was still inside apartment 6B, defendants decided to make a forced entry into apartment 6B.

7

68. Defendant Lieutenant Reilly explicitly requested that a NYPD Emergency Services Unit (ESU) truck proceed to the location for the purpose of breaking into apartment 6B.

69. Defendant Lieutenant Reilly made this request based on sheer speculation that the caller had somehow returned to apartment 6B and might be inside the apartment.

70. Defendant Lieutenant Reilly's speculation did not amount to probable cause to break into an occupied apartment without a warrant and without consent at approximately 4:19 A.M.

71. Recognizing that there was no probable cause for a warrantless entry to investigate whether there was a crime in progress, defendant Lieutenant Reilly explicitly stated, in a statement appearing on the official NYPD chronology of the Incident, that his request for an ESU break-in was "ENTRY FOR AIDED ONLY…NO PERP SEARCH."

72. Reilly did not have probable cause to believe that the 911 calls were truthful.

73. Reilly did not have probable cause to believe that the caller was inside apartment 6B. She has explicitly stated the contrary on both calls.

74. Defendants' claim that they banged on plaintiffs' door repeatedly before breaking in is belied by the fact that plaintiffs awoke as soon as defendants broke in. Had defendants made loud banging noises before breaking in plaintiffs would have been awakened.

75. Defendants did not ask the occupants if they were all right and if everything was all right in the apartment before breaking through the door and forcibly entering the apartment

76. Despite the fact that all was calm within the small apartment, defendants spent an inordinately long time there -- approximately 20 minutes -- just to check that there was no injured person in the apartment and no sign of any struggle.

77. Defendants' intrusion included not only breaking into the apartment but also breaking

8

the lock on the door to one of the rooms within the apartment.

78. Plaintiffs were terrified by the incident.

79. Plaintiff Patricia Bell began to experience chest pains and had to go to Woodhull Medical and Mental Health Center (hereafter "Woodhull Hospital"), 760 Broadway, Brooklyn, NY 11206, arriving at 12:53 P.M. on Friday, July 26, 2013, the date of the police intrusion into her dwelling.

80. Woodhull Hospital records confirm that plaintiff Patricia Bell complained that she had begun suffering chest pains because police officers had broken down her apartment door and had broken into her dwelling,

81. Woodhull Hospital records reflect that plaintiff Patricia Bell was crying during triage at the Hospital.

82. Woodhull Hospital records reflect that at 4:35 P.M. on July 26, 2013, plaintiff Patricia Bell was transferred from the emergency room to an observation unit at Woodhull Hospital.

83. Woodhull Hospital records reflect Plaintiff underwent numerous tests at Woodhull Hospital on July 26 and 27, 2013.

84. Woodhull Hospital records reflect that plaintiff Patricia Bell was confined to the Hospital until at least 12:05 P.M. on Saturday, July 27, 2013.

85. The raid of July 26, 2013, has left plaintiffs shattered and frightened.

86. Plaintiffs are fearful that if the police could do this sort of thing to them once, it could easily happen again.

87. Plaintiffs are scared that they have no defense against this kind of police intrusion into the sanctity of their own dwelling.

88. In December 2013, when first apprised of the alleged reasons for the police intrusion, plaintiff Johnnie Bell advised the City that he had been visited by an acquaintance named Tanganeke Jackson on Thursday, July 25, 2013, the day before the incident.

89. Mr. Bell had been acquainted with her for 3-4 years and their relationship was not one of prostitute and customer.

90. Jackson had left the apartment at approximately 8:00 P.M. after arguing with Mr. Bell about wanting more cab money even though he had already given her some. At no time was there any physical altercation, he did not take her cell phone, and he has not seen or heard from her since.

91. As a result of the verbal altercation on July 25, 2013, Jackson apparently decided to retaliate against plaintiff by making two spurious calls to 911 and then disappearing so that the police could not apprehend her and charge her with making a gratuitous false report. (New York State Penal Law § 240.50 (3), Falsely Reporting an Incident in the Third Degree, a Class A Misdemeanor.)

### FIRST CLAIM FOR RELIEF

92. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91.

93. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

### SECOND CLAIM FOR RELIEF

94. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91 and 93.

95. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police officers, supervisory officers and other employees.

96. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police officers, supervisory officers and other employees constitutes gross and deliberate indifference to unconstitutional conduct by those individuals.

97. The official policies, practices and customs of the City of New York and the NYPD alleged in ¶¶ 1-91, 93 and 95-96 violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

98. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91, 93, and 95-97.

99. The conduct toward plaintiffs alleged herein constituted an illegal entry into and search of a dwelling, false imprisonment, and employee negligence.

100. The conduct toward plaintiffs alleged herein subjected them to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### FOURTH CLAIM FOR RELIEF

101. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-91, 93, 95-97, and 99-100.

102. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York,

11

which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a)  Compensatory damages against all defendants, jointly and severally;

(b)  Punitive damages against all individual defendants, jointly and severally;

(c)  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)  Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        February 20, 2014

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**

TO:  **JENNIFER SCHUMAN, ESQ.**
Special Assistant Corporation Counsel
100 Church Street
New York, NY 10007

**ATTORNEY FOR DEFENDANTS**